IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH SANDERS, )
)
        Plaintiff, )
)
vs. ) Civil No. 16-cv-1336-JPG-CJP
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
        Defendant.[1] )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Joseph Sanders seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in July 2013 alleging disability beginning on April 6, 2012. After holding an evidentiary hearing, ALJ Stuart T. Janney denied the application in a written decision dated August 20, 2015. (Tr. 20-32.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred in giving too little weight to the opinion of Dr. Woiteshek, an orthopedic specialist who examined him.

2. The ALJ did not consider his pain medication and side effects.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (visited Feb. 7, 2017). She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether

the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Mr. Sanders was, in fact, disabled at the relevant time but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Janney followed the five-step analytical framework described above. He determined that

plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB only through December 31, 2014. He found that plaintiff had one severe impairment, lumbar spine degenerative disc disease, which did not meet or equal a listed impairment.

The ALJ found that Mr. Sanders had the residual functional capacity (RFC) to perform work at the light exertional level, limited to frequent climbing of ramps and stairs; occasional climbing of ladders, ropes and scaffolding; occasional stooping; no concentrated exposure to vibration or hazards such as moving machinery; no unprotected heights; and no operation of commercial motor vehicle equipment. Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff could not do his past relevant work but that he was not disabled because he was able to do other jobs which exist in significant numbers in the local and national economies.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

1. **Agency Forms**

Plaintiff was 38 years old on the alleged onset date. (Tr. 227.) He had worked as a grain inspector and a maintenance welder. (Tr. 230.)

Plaintiff said he was unable to work because of lumbar pain and pain in his left hip. He had to alternate between sitting and standing and had to lie down every six hours. (Tr. 249.)

A prior claim for DIB was denied by a different ALJ on April 5, 2012. (Tr. 108-117.)

2. **Evidentiary Hearing**

Mr. Sanders was represented by an attorney at the evidentiary hearing in July 2015. (Tr. 73.)

4

Plaintiff lived with his wife and eighteen-year-old son. His wife was a postmaster for the U.S. Postal Service. He had health insurance through her employment. (Tr. 76.)

He was unable to work because of back problems. His primary treating doctor was Dr. Kennedy. He had last seen Dr. Kennedy in 2012. Dr. Kennedy said he could not do anything for him except implant an electrical stimulator. Plaintiff did not want to have an electrical stimulator implanted. He did use a TENS unit. He took Gabapentin, Baclofen and Norco. He took Norco for pain relief three or four times a day. All of his medications made him drowsy. (Tr. 81-83.)

A VE also testified. The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment. The VE testified that this person could do the jobs of production solderer, production assembler and hardware assembler. (Tr. 100-01.)

3. **Medical Treatment**

Plaintiff had fusion surgery from L4 to S1 in 2009. (Tr. 398.)

In 2011, he returned to the neurosurgeon, Dr. Kennedy, complaining of pain in the lower lumbar area and both legs. Dr. Kennedy did not recommend any additional surgery but thought he should be evaluated by another doctor regarding implantation of a dorsal spinal column stimulator. (Tr. 402.)

Plaintiff saw his primary care physician, Dr. Fozard, regularly from 2010 to May 2015. (Tr. 403-54.) In May 2012, he complained of pain in his left hip and left low back. Straight leg raising was negative. He walked without difficulty and had no limp. The diagnosis was left sciatica. (444-45.)

In June 2012, an MRI of the lumbar spine showed post-operative changes of interbody fusion at L4-5 and L5-S1. A small disc herniation at L1-2 "probably causes significant impingement on the exiting left L1 nerve root just lateral to the neural foramen." (Tr. 454.)

In October 2012, he was seen at Dr. Fozard's office for "essentially constant" back pain. He

was taking Norco, Gabapentin, and Baclofen. Exam showed pain on palpation over the lumbar region. (Tr. 434-435.) In January 2013, he was getting some relief from a TENS unit. (Tr. 430.) In June 2013, he was "doing well with TENS unit and Vicodin." (Tr. 424.) However, in December 2013, he complained of new "shock-like" pain to his lower back four to five times weekly. He was advised to see Dr. Kennedy. In February, he reported that Dr. Kennedy's office said he could not get an appointment until he paid the money that he owed Dr. Kennedy. He again had pain on palpation over the lumbar region. (Tr. 418-21.) In May, he said he was going to have a stimulator surgically implanted. He was saving the money to pay for that. In July, he reported that the company he worked for when he hurt his back would pay for the surgery. He was seen at Dr. Fozard's office a few more times through the date last insured, but there was no further mention of having a stimulator surgically implanted. Physical exam continued to indicate only pain on palpation to the lumbar spine. The diagnosis was chronic low back pain. (Tr. 410-16.)

Dr. Dwight Woiteshek, an orthopedic surgeon, examined plaintiff in June 2014. The examination was done at the request of the attorney representing plaintiff regarding his on-the-job injury, and the report was addressed to the attorney. (Tr. 381-90.) Dr. Woiteshek reviewed past medical records which indicated that Dr. Kenney had performed a complete discectomy, decompression, and fusion at L4-S1 in June 2009. Plaintiff continued to complain of pain after he recovered from the surgery. A Dr. Feinberg gave him two injections in 2010 and described his condition as post laminectomy syndrome of the lumbar spine. On exam, Dr. Woiteshek noted pain and tenderness in the lumbar spine area with muscle spasms and guarding. Straight leg raising was positive at 60 degrees on both sides. There was no weakness in the lower extremities. Sensory exam was normal. Range of motion of the lumbar spine was reduced by 33 to 40 percent. Dr. Woiteshek said that plaintiff had

permanent work restrictions consisting of avoiding all bending, twisting, lifting, pushing, pulling, carrying, climbing and "other similar tasks as needed;" only occasional lifting up to 10 to 15 pounds; no handling weight overhead or away from the body; changing position every 20 to 30 minutes; and "rest in a recombinant [sic] fashion when needed." Dr. Woiteshek recommended that he pursue stretching, strengthening and range of motion exercises as well as nonimpact aerobic conditioning. He concluded that plaintiff was "permanently and totally disabled and unable to return to any employment" because of his June 5, 2009, work injury. (Tr. 381-90.)

## **Analysis**

Plaintiff first argues that the ALJ should have given more weight to Dr. Woiteshek's opinion.

Dr. Woiteshek did not treat plaintiff. Therefore, his opinion is not entitled to "controlling weight" under § 404.1527(c)(2). *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009). The ALJ was required to evaluate Dr. Woiteshek's opinion by considering how well Dr. Woiteshek "supported and explained his decision, whether his decision is consistent with the record," his specialty, and "any other factors of which the ALJ is aware." *Simila*, 573 F.3d at 515.

ALJ Janney discounted Dr. Woiteshek's opinion because it was not consistent with the objective medical evidence. He pointed out that Dr. Fozard's treatment records for a three year period showed no problems with gait, motor strength, sensation or reflexes. The only positive finding in Dr. Fozard's notes was pain to palpation of the lumbar spine. Another reason given by the ALJ was that Dr. Woiteshek's opinion was inconsistent with the opinions of the state agency consultants, which were consistent with the record as a whole. The ALJ also cited plaintiff's daily activities, the conservative nature of his treatment for the past three years, and plaintiff's admission that the TENS unit helps his pain. These are all valid reasons.

7

Plaintiff points out that Dr. Woiteshek is an orthopedic specialist, unlike the two state agency consultants, but that fact is not dispositive. A specialist's opinion is "*generally* entitled to more weight; it is not presumptively so (unlike treating physicians)." *Simila*, 573 F.3d at 516. (emphasis in original).

Plaintiff also argues that an examining doctor is generally entitled to more weight than that of a doctor who did not examine the plaintiff, citing § 404.1527(c)(1). That is true, but, once again, the regulation creates a general rule, not a presumption. *See, e.g., Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (affirming the ALJ's decision to give greater weight to the state agency consultant's opinion than that of a treating doctor.)

Plaintiff acknowledges that among the factors to be considered is whether the opinion is consistent with other evidence in the record. Here, he argues that Dr. Woiteshek's opinion was entitled to more weight because it was consistent with Dr. Kennedy's opinion. Dr. Kennedy treated plaintiff, and he wrote a report in September 2010 setting forth a number of work restrictions. (Tr. 379.) Plaintiff argues that Dr. Kennedy's opinion should be deferred to because he treated plaintiff, and Dr. Woiteshek's opinion should be accepted because it is consistent with Dr. Kennedy's opinion.

Plaintiff's argument fails. First, Dr. Woiteshek's opinion is not entirely consistent with that of Dr. Kennedy. For example, Dr. Kennedy thought that plaintiff should change position every two hours, while Dr. Woiteshek said that he should avoid remaining in a fixed positons for more than twenty or thirty minutes. More importantly, as the ALJ pointed out, Dr. Kennedy's opinion was more than five years old. Dr. Kennedy gave his opinion in September 2010, before the alleged onset date. Plaintiff's prior application was denied in April 2012. That denial stands as a finding that he was not disabled as of that date. *See Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998). The ALJ who denied plaintiff's prior application rejected Dr. Kennedy's opinion because it was contradicted by an earlier report authored by

8

Dr. Kennedy and it was contradicted by Dr. Kennedy's treatment notes. (Tr. 115.) In relying on Dr. Kennedy's opinion here, plaintiff is attempting to get around the preclusive effect of the prior denial.

In short, it was the ALJ's duty to determine how much weight to give to Dr. Woiteshek's opinion, applying the factors set forth in § 404.1527(c). It is apparent that ALJ Janney did so. Plaintiff has not identified any error requiring remand.

Plaintiff's second point requires little discussion. The ALJ gave a number of specific reasons for discounting the credibility of plaintiff's allegations about the severity of his symptoms. (Tr. 28.) Plaintiff does not take issue with any of those reasons. Rather, he complains that the ALJ failed to discuss his allegation that Norco made him drowsy.

Plaintiff cites no case holding that a failure to discuss medication side effects, in and of itself, requires remand. The ALJ's credibility determination is to be overturned only if it is "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). It is difficult to see here how the failure to mention his alleged drowsiness could render the credibility determination patently wrong. His allegation of drowsiness was considered by the state agency consultants, and they recommended that he be restricted from exposure to workplace hazards to accommodate drowsiness. (Tr. 136, 146-47). The ALJ adopted that restriction in his RFC assessment. Therefore, although he did not expressly say so, plaintiff's alleged side effects were factored into the RFC assessment. *See Pepper,* 712 F.3d at 364-365 (holding that a failure to discuss obesity was harmless where the ALJ adopted limitations suggested by doctors who had specifically considered plaintiff's obesity).

Plaintiff has not identified any error requiring remand. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or

substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d at 413. ALJ Janney's decision is supported by substantial evidence and so must be affirmed.

### Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Janney committed no errors of law and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Joseph Sanders' application for disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**
**DATE:   September 12, 2017**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**